THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **Nicholas Rozdilsky**<br>606 Oak Knoll Terrace<br>Rockville, MD 20850<br><br>**Plaintiff,**<br><br>v.<br><br>**Liquidity Services, Inc.**<br>6931 Arlington Road, Suite 200<br>Bethesda, MD 20814<br><br>**Defendant.** | Civil Case No.<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

1. To fashion a quick, superficial fix for its diversity problem, Liquidity Services, Inc. (LSI) fired Nicholas Rozdilsky and gave his job to a substantially younger and less experienced Black employee, who reported to Rozdilsky.

2. When LSI terminated Rozdilsky's employment, he had worked as a marketing executive with the company for three years and served as its Vice President/Chief Marketing Officer. In the years prior to and up through his termination, Rozdilsky consistently earned high praise and performance-based bonuses and equity awards for his exemplary work.

3. LSI's termination of Rozdilsky constitutes unlawful discrimination and/or retaliation and violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, §§ 20-601, *et seq*. (MFEPA).

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims in accordance with 28 U.S.C. §§ 1331, 1343(a)(4), 1367, 42 U.S.C. § 2000e-5(f), and 29 U.S.C. § 626(c).

5. Venue is proper in this district as Plaintiff was employed in this district and the discriminatory acts by Defendant took place here.

6. The operative employment agreement between the parties further states that any legal action related to Rozdilsky's employment with LSI must be adjudicated in Maryland.

## PARTIES

7. Plaintiff Rozdilsky is a resident of Maryland and a former employee of Defendant LSI who worked in Maryland.

8. Defendant LSI is a for-profit company that conducts business and is headquartered in Maryland. Defendant employed Plaintiff from 2018 to 2021, when it unlawfully terminated his employment. Defendant is an employer as defined by Title VII, the ADEA, and the MFEPA.

## FACTS

9. Nicholas Rozdilsky began his employment with LSI as a Vice President – Marketing in April 2018 and LSI later changed his job title to Vice President/Chief Marketing Officer in November 2019, and he remained in this role until LSI fired him in August 2021.

10. Rozdilsky has over two decades of experience in all aspects of E-commerce, including building and running auction marketplaces plus leading all aspects of traditional and digital marketing, which mainly focused on the selling of physical merchandise.

11. Rozdilsky is a 52-year-old Caucasian male.

12. LSI operates a network of traditional and auction e-commerce marketplaces for surplus and overstock physical goods.

13. Rozdilsky served as the highest-ranking executive within LSI's marketing function. The team of employees that reported to Rozdilsky included, but was not limited to, a younger, Black employee who Rozdilsky hired. This Black employee is approximately 10 years younger than Rozdilsky.

14. During his employment with LSI, Rozdilsky did much to support and encourage diversity and inclusion at LSI. Indeed, he assembled the most diverse team of employees in LSI's history and the vast majority of his direct reports, who he hired or promoted, were women and/or people of color.

15. Rozdilsky's job performance while with LSI was excellent. At LSI, an executive's job performance is measured by whether key financial targets are achieved. During Rozdilsky's employment with LSI, these financial targets were met or exceeded each year.

16. His accomplishments included transforming LSI's Marketing and Technology platforms, including launching the LOT 2.0 platform and the AllSurplus.com website. These initiatives directly contributed to LSI's record-breaking growth and the rise in its stock price.

17. Moreover, numerous leaders, including CEO William Angrick III, and investors in LSI provided very positive feedback regarding Rozdilsky's job performance and he consistently earned substantial performance-based bonuses, raises, and equity.

18. Rozdilsky reported to LSI CEO Angrick, a Caucasian male.

19. Neither CEO Angrick nor any other LSI representative informed Rozdilsky of any substantial job performance deficiencies that would warrant discipline, much less termination.

**Discrimination against Rozdilsky**

20. In summer 2020, following the George Floyd murder and protests, the largest institutional investor in LSI, Blackrock, issued a call to diversify ranks of upper managers in companies Blackrock invested in, in particular to advance "Black professionals."

21. Prior to this statement from its largest investor, neither CEO Angrick nor LSI made any meaningful attempt to foster diversity or inclusion within the company. Indeed, as noted above, Rozdilsky was unique in the company for his steadfast support of and concrete efforts to promote diversity and inclusion within his team.

22. Concerned about losing support from Blackrock, and the investor community in general, CEO Angrick and LSI leadership opted against sincere self-examination and/or meaningful actions to address its glaring diversity and inclusion problems. Rather, LSI chose to "check a box" and jettison Rozdilsky while replacing him with a younger, Black employee in a quick-fix attempt to make its leadership appear more diverse and inclusive.

23. During a Board meeting in early August 2021, approximately one week before his termination, LSI Board members praised Rozdilsky's job performance and contributions.

24. Yet on August 13, 2021, LSI summarily fired Rozdilsky. The only explanation provided by LSI was that it wanted to take the company "in a different direction."

25. As a result, rather than take action against Caucasian LSI employees who mistreated and discriminated against non-Caucasian and female employees, CEO Angrick and LSI chose to terminate Rozdilsky—one of the few LSI employees who "walked the walk" when it came to diversity and inclusion—because of his race and/or age.

26. Soon after the Blackrock announcement, in August 2020, CEO Angrick told another Caucasian, older employee, Michal Lutz, that Lutz should retire to improve diversity. LSI then terminated Lutz's employment a few weeks later.

27. As he would later do with Rozdilsky, in September 2020, CEO Angrick replaced Lutz with a younger, Black employee who lacked the same experience and qualifications for the position as compared to Lutz.

**Retaliation against Rozdilsky**

28. LSI also acted against Rozdilsky because of his protected activities. For example, in September 2020, Rozdilsky complained to human resources and other LSI employees about male Caucasian employees mistreating female employees in what amounted to a "frat house" environment.

29. Then in December 2020, Rozdilsky reported to LSI human resources that systemic discrimination against women existed at LSI as well as racial hostility toward non-Caucasian employees. Rozdilsky's complaints included reports about CEO Angrick's verbal harassment of a female employee. This toxic "tone at the top" set by CEO Angrick also manifested itself in the Sales team, made up of all Caucasian men, treating female and minorities less favorably than male and Caucasian employees. LSI human resources failed to take appropriate action in response to Rozdilsky's multiple complaints.

30. In March 2021, Rozdilsky again complained to LSI human resources about racist and sexist conduct by Caucasian, male employees on the LSI Sales team as well as by CEO Angrick. Rozdilsky reported, among other things, that CEO Angrick talked about Muslim people as "those people," the continued mistreatment of women and minorities by male, Caucasian employees,

and CEO Angrick's decision to reject a very qualified Black candidate in favor of a less qualified Caucasian candidate.

31. In April and May 2021 and beyond, Rozdilsky continued to report the unequal treatment that female and/or non-Caucasian LSI employees experienced. Indeed, Rozdilsky complained to human resources within a week of his termination about disparate treatment against multiple female and/or non-Caucasian employees who should have been promoted. LSI claimed "off cycle" promotions for these employees were not allowed. Yet LSI allowed white, male employees to be promoted "off cycle." Further, Rozdilsky continued to complaint about the "frat house" culture among the Sales team, which consisted of Caucasian, male employees.

32. LSI did not claim that it terminated Rozdilsky's employment due to job performance concerns and CEO Angrick and a human resources representative stated that Rozdilsky was not fired for cause.

33. CEO Angrick, who was a target of Rozdilsky's complaints about discrimination, made the decision to terminate Rozdilsky's employment.

34. Prior to being notified of his termination, Rozdilsky had not expressed any intent to retire or stop working for LSI.

**LSI replaces Rozdilsky**

35. LSI chose to replace Rozdilsky with a younger, Black employee even though Rozdilsky possessed greater qualifications and experience compared to this employee.

36. For example, this younger, Black employee had reported to Rozdilsky and served in a role two levels below him. And in a January 2021 performance review meeting, this employee stated that he (the employee) should not receive a one-level promotion because he did not have sufficient accomplishments to justify this move. Likewise, in April 2021, the Head of Human

resources said that this younger, Black employee was not qualified to succeed Rozdilsky in Rozdilsky's role. Rozdilsky's Succession Plan, which was approved by human resources, did not name this younger, Black employee as a possible successor.

37. While the goal of achieving diversity in leadership positions is laudable, terminating high performing employees for no legitimate reason other than to create the appearance of increased diversity constitutes an adverse employment action based on race and/or age. Had LSI truly been committed to fostering a diverse and inclusive environment, it would have terminated the employees about whom Rozdilsky and others had complained of for discriminatory behavior against Black and female LSI employees. Instead, LSI fired Rozdilsky in a dissembling nod to diversity.

38. LSI has not offered any legitimate reason for involuntarily terminating Rozdilsky's employment, and any supposed legitimate basis advanced by LSI would be nothing more than a pretext for discrimination and retaliation.

39. The actual motivation for LSI's decision to fire Rozdilsky was that the company terminated his employment because of his race and age to hastily improve the diversity profile of the company's leadership team by replacing him with a younger, Black employee. This decision discriminated against Rozdilsky because of his race and age.

40. Likewise, LSI based its decision to fire Rozdilsky on his protected activities, which included but were not limited to, reporting discrimination against female and non-Caucasian LSI employees.

41. LSI's decision to terminate Rozdilsky's employment was made by CEO Angrick and was either malicious or taken in reckless disregard of Rozdilsky's right to be free from employment discrimination.

42. Moreover, CEO Angrick's decision to fire Rozdilsky and replace him with a younger employee constitutes willful age discrimination.

43. Rozdilsky timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and that charge has been pending more than 180 days. Rozdilsky's claims of race discrimination and retaliation under Title VII and age discrimination under the ADEA have thus been properly exhausted. Rozdilsky's race discrimination and retaliation claims under Section 1981 do not require administrative exhaustion.

44. Due to LSI's termination of Rozdilsky, he has remained unemployed since August 2021 despite making reasonable efforts to find comparable employment.

## STATEMENT OF CLAIMS

### Count I:  Race Discrimination under 42 U.S.C 1981, Title VII, and Maryland Fair Employment Practices Act

45. Plaintiff adopts and incorporates by reference all the paragraphs above.

46. Defendant LSI fired Plaintiff Rozdilsky because of his race in violation of Section 1981 Title VII, and/or Maryland Fair Employment Practices Act.

47. Defendant's actions were willful, wanton, and malicious, and/or taken in reckless disregard of Rozdilsky's rights under the law.

### Count II:  Age Discrimination under the ADEA and Maryland Fair Employment Practices Act

48. Plaintiff adopts and incorporates by reference all of the paragraphs above.

49. Defendant's decision to fire Plaintiff was also motivated because of his age in violation of the ADEA and Maryland Fair Employment Practices Act. Plaintiff's age was a but-for cause of his termination.

50. Defendant's age discrimination was willful.

### Count III: Retaliation in violation of Section 1981, Title VII, and Maryland Fair Employment Practices Act

51. Plaintiff adopts and incorporates by reference all the paragraphs above.

52. A causal relationship exists between Plaintiff's protected activities and Defendant's decision to fire him in violation of Section 1981, Title VII, and/or Maryland Fair Employment Practices Act.

53. Defendant's actions were willful, wanton, and malicious, and/or taken in reckless disregard of Rozdilsky's rights under the law

### **REMEDIES**

54. WHEREFORE, Plaintiff respectfully requests that the Court issue judgment in his favor and grant him the following relief:

   a. A declaratory judgment that Defendant discriminated and/or retaliated against Plaintiff, as alleged herein;

   b. An award of back pay, including without limitation salary, bonuses, stock grants and/or options, and other lost benefits due to Defendant's discrimination and/or retaliated against Plaintiff;

   c. Reinstatement to his position with Defendant, or to a like and equivalent job, or in the alternative, an award of front pay, to compensate Plaintiff for the financial loss he will continue to suffer;

   d. Compensatory and punitive damages in appropriate amounts to be determined by the jury;

   e. Liquidated damages for Defendant's willful violation of the ADEA;

   f. Prejudgment and post judgment interest on all lost compensation and post-judgment interest on any compensatory or punitive damages awards;

    g.  Reasonable attorneys' fees and costs as allowed by law; and

    h.  Such other and further relief as the Court deems just and warranted.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues of facts and damages arising herein.

Respectfully submitted,

_____/s/_____
Eric Bachman (MD Bar No. 16325)
BACHMAN LAW
4800 Hampden Lane, Suite 200
Bethesda, MD 20814
Telephone: (202) 256-6931
Facsimile: (240) 303-8091
Email: ebachman@ebachmanlaw.com

Date: December 28, 2022

*Attorney for Plaintiff Nicholas Rozdilsky*